STATE OF CONNECTICUT *v.* JOHN ROSSIER

STATE OF CONNECTICUT *v.* GERALD ROSSIER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued December 15, 1977—decision released May 30, 1978

*Herbert Watstein*, with whom, on the brief, was *Julius Watstein*, for the appellants (defendants).

*Richard F. Banbury*, chief assistant state's attorney, with whom, on the brief were *George D. Stoughton*, state's attorney, and *Richard E. Maloney*, assistant state's attorney, for the appellee (state).

SPEZIALE, J. The defendants, John Rossier (John) and Gerald Rossier (Gerald), were each charged in two-count informations with assault in the first degree, General Statutes § 53a-59 (a) (3),[1] and with threatening, General Statutes § 53a-62 (a) (1).[2] After a joint trial to a jury, each defendant was found guilty as charged and judgment was rendered on the verdict. The cases have been joined for the purpose of the defendants' appeals from those judgments. Practice Book, 1963, § 606.

The incident which gave rise to the charges against John and Gerald occurred on September 2, 1975. The two men, who were admittedly intoxi-

[1] "[General Statutes] Sec. 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person. . . ."

[2] "[General Statutes] Sec. 53a-62. THREATENING: CLASS A MIS-DEMEANOR. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

cated, were driving on Farmington Avenue in Bristol. They stopped for a red light and the vehicle operated by the complainant, Richard Zakas, stopped next to them. There followed an exchange of obscenities between the occupants of the two vehicles. This was repeated at the next intersection. Zakas then drove off, proceeding to a sports shop operated by an acquaintance, Richard J. Denney. He entered the shop, and John and Gerald entered shortly thereafter. Zakas was grabbed and beaten and admonished to refrain from the use of obscene gestures. There was testimony that Denney was told: "If you call the police we will kill you."

Later that evening, Zakas received out-patient treatment in the Bristol Hospital emergency room. The hospital records indicate that his x-rays were normal and his coordination and motor and sensory systems were intact. The diagnosis was multiple contusions and a sprain of the right ankle, for which he was given an ace bandage. He was discharged and referred to one Bagdasarian, a physician. Zakas subsequently sought further medical treatment from Russell S. Bower, a neurosurgeon, whom he first consulted on October 27, 1975, almost two months after the altercation. It was Bower's opinion that Zakas was suffering from an emotional problem resulting from the September assault. He referred Zakas to a psychiatrist, Jorge Leicach, who saw Zakas in February, 1976, and diagnosed his condition as "post-trauma reaction." At the trial, Bagdasarian was not called as a witness; the state did, however, introduce the records from Bristol Hospital, and called both Bower and Leicach as witnesses.

Although the defendants have raised numerous claims of error, in view of our disposition of the

case it is not necessary to review all of them. We first address the defendants' claim that the trial court erred in denying their motions to grant judgment n.o.v. on the assault charges. The ground for the motions was that the state failed to sustain its burden of proving the complainant suffered "serious physical injury" as a result of the assault. We agree.

General Statutes § 53a-3 (4) defines *"serious physical injury"* as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." On the other hand, "physical injury," is defined in General Statutes § 53a-3 (3) simply as "impairment of physical condition or pain." Although it may often be difficult to distinguish between the two, such a distinction must be drawn; a person can be found guilty of assault in the first degree under General Statutes § 53a-59 (a) (3) only if he "causes *serious* physical injury to another person." (Emphasis added.)

Whether the physical injury sustained by Zakas was serious was a question of fact for the jury, assuming sufficient evidence had been introduced. Our task in reviewing the sufficiency of the evidence to support a jury verdict is to construe the evidence as favorably as possible with a view toward sustaining the verdict, and then to determine whether, based on such evidence, a jury could reasonably have reached its conclusion. *State* v. *Jeustiniano,* 172 Conn. 275, 281–82, 374 A.2d 209 (1977). In the case before us, the evidence of physical injury —which consisted primarily of testimony relating to emotional trauma precipitated by the incident—

was simply not sufficient to support the jury's implicit conclusion that the physical injury sustained by Zakas was "serious" under the statutory definition. Compare *State* v. *Robinson,* 174 Conn. 604, 392 A.2d 475 (1978); *State* v. *Sawicki,* 173 Conn. 389, 395, 377 A.2d 1103 (1977); *State* v. *Jeustiniano,* supra. Consequently, it was error for the court to deny the defendants' motions to grant judgment n.o.v. on the charges of assault in the first degree.

The next claim of error is directed to the court's charge on the insanity defense raised by John. The state was notified prior to the trial that John intended to rely on a defense of insanity.[3] At trial, evidence was introduced that John had begun psychiatric treatment at the age of eight, and that, as an adolescent, he had received further psychiatric treatment at Children's Village, where he was a resident for three to four years. Montgomery Winship, a psychiatrist who had treated John at Children's Village, was produced by the defense as an expert witness. He testified that, in his opinion, as a result of mental disease or defect John had no capacity to conform his conduct to the requirements of law and lacked substantial capacity to appreciate the wrongfulness of his conduct. The court charged the jury regarding John's defense of insanity, but it did not instruct them that the state had the burden of proving John sane beyond a reasonable doubt.

---

[3] "[General Statutes] Sec. 53a-13. INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

"The state has a right, in the first instance, to rely on the presumption that the defendant was sane at the time of the offenses alleged in the . . . [information], and thereupon it becomes the privilege of the accused to offer such evidence as he desires upon the subject of his mental condition. As soon as substantial evidence tending to prove insanity comes into the case, the presumption loses all operative effect. The state may then rebut this evidence if it desires or submit the issue to the court upon the evidence offered. In either case, the issue having been raised, the burden rests upon the state, as it does in all other essential elements in the case, to prove beyond a reasonable doubt that the accused was legally sane and responsible at the time the offenses were committed. *State* v. *Conte,* 157 Conn. 209, 212, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428; *State* v. *Kenyon,* 134 Conn. 43, 49, 54 A.2d 585; *State* v. *Joseph,* 96 Conn. 637, 639, 115 A. 85." *State* v. *Davis,* 158 Conn. 341, 355, 260 A.2d 587 (1969).

Whether a defendant has succeeded in putting sanity in issue is a question of law for the trial court. 1 Wharton, Criminal Evidence (13th Ed.) § 29. Once the court determines that sanity has become an issue, then the presumption of sanity loses all operative effect; *State* v. *Davis,* supra; and there is serious doubt about the propriety of even mentioning this presumption in the charge to the jury. See *State* v. *Holmquist,* 173 Conn. 140, 150, 376 A.2d 1111 (1977). Certainly, the court must make it clear to the jury that the state cannot rely on the presumption of sanity but has the burden of proving the defendant sane beyond a reasonable doubt.

Here, the trial court's instruction regarding the insanity defense of John Rossier referred to the presumption of sanity in an ambiguous and confusing fashion and did not make it clear that the burden had shifted to the state to prove John sane beyond a reasonable doubt.[4] The charge, as given, was ambiguous on a crucial point and was not sufficient to guide the jury in reaching their verdict. Such a defect in the charge constitutes reversible error. See *State* v. *Rose,* 169 Conn. 683, 687–89, 363 A.2d 1077 (1975). Therefore, the defendant John Rossier is granted a new trial on the threatening count of the information.

The remaining claims of error applicable to Gerald's appeal are (1) that the court's instruction on the intoxication defense to the threatening charge was misleading, and (2) that it was error for the court to instruct the jury that it was "conceivable" that they could find one defendant guilty and the other not guilty. At trial, no exception was taken to either of these portions of the charge, and since neither of the claimed errors is of constitutional proportions and there are no other exceptional circumstances present, these claims are not properly before us. Practice Book, 1963, § 652; State v. *Lockman,* 169 Conn. 116, 124, 362 A.2d 920 (1975); cf.

---

[4] The jury were told: "In a matter of a claim of insanity, we start with the presumption that the Defendant . . . is sane. The Defendant . . . presented evidence through Doctor Winship tending to show that he was . . . insane. . . . The jury may believe or disbelieve all or any portion of the evidence of Doctor Winship as to insanity. The State has the burden of proving sanity once the presumption of sanity has been overcome, but the State is under no requirement to produce expert testimony as to insanity. The jury is entitled to disbelieve the opinion of the Defendant's expert as to insanity, and, if it does so, the jury could disregard the defense of insanity."

*State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). Consequently, Gerald's conviction on the threatening count must stand.

There is error in part; as to both defendants the judgments on the first counts are set aside and the cases are remanded with direction to render judgment that the defendants are not guilty. On the second counts, the judgment in the case of *State* v. *John Rossier* is set aside and the case is remanded for a new trial; however, there is no error in the case of *State* v. *Gerald Rossier* on the judgment on the second count.

In this opinion the other judges concurred.