STATE OF CONNECTICUT *v.* MANUEL ESTRADA
(9360)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued December 5, 1991—decision released February 18, 1992

*Robert G. Golger,* with whom, on the brief, was *Howard T. Owens, Jr.,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Manuel Estrada, appeals from his conviction of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and four counts of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). He received a total effective sentence of twenty years incarceration. On appeal, the defendant raises five claims. He contends that the trial court improperly (1) instructed the jury on the principles of accessory liability in its charge on assault in the first degree, (2) admitted the testimony of a state's witness as evidence of an "admission by silence" and instructed the jury that the defendant's failure to respond to an accusatory statement could be considered an admission of guilt, (3) denied his motion for judgment of acquittal as to the count of assault in the first degree because

the state failed to prove that the victim sustained serious physical injury, (4) admitted into evidence a written statement of a witness that was not based on personal information for substantive purposes under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and (5) instructed the jury that the defendant could be found guilty as a principal in the assault although the state presented no evidence to substantiate such an instruction. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the night of January 22, 1988, there was a knock on the door of the second floor apartment at 466 Kossuth Street in Bridgeport. Rose Roman Crawley opened the door and was grabbed and forced back into the apartment by a short black male, one of three men standing outside the door. The three armed men, two black and one Hispanic, entered the apartment in search of individuals they referred to as "Junior," "Felipe" and "Macho." In the apartment at that time were John Roman, his sisters Maria Roman, Rose Roman Crawley and Carmen Maldonado, his mother Marina Roman, and a friend of one of his sisters, Carmen Orellano. Immediately upon entering the apartment, the shorter black male locked all of the women in the bathroom. The three men then searched the apartment. After an unsuccessful search, they returned to the kitchen. The shorter black male turned out the light. At the time the lights were turned out, the short black male was standing approximately ten feet to John Roman's left, the tall black male was standing about five feet to his right and the defendant was standing in the middle of the room, twelve feet in front of him. About four seconds later, John Roman was shot twice, once in each leg. Before falling, he saw flashes from a gun being fired from the center of the room, where

the defendant was standing. The three assailants then ran out of the apartment.

The women broke out of the bathroom and found John Roman sitting in a pool of blood on the floor in the kitchen. He was taken to Bridgeport Hospital and was treated for the gunshot wounds. He remained in the hospital overnight, experienced pain, was required to use crutches for over two months and was permanently scarred by the bullet wounds.

## I

The defendant first argues that the trial court should not have instructed the jury on the principles of accessory liability in its charge on assault in the first degree, thus impermissibly broadening the theory of liability beyond the allegations of the pleadings.[1] Specifically, on the basis of *State* v. *Steve,* 208 Conn. 38, 544 A.2d 1179 (1988), the defendant claims that because he was charged in the amended information as a principal to the crime of assault in the first degree, he could not be an accessory to that crime. Thus, he claims that the trial court improperly instructed the jury. We disagree.

There is no practical significance in being labeled an "accessory" or a "principal" for the purpose of determining criminal responsibility. See General Statutes (1875 Rev.) tit. XX, c. XIII, part X; *State* v. *Gargano,* 99 Conn. 103, 109, 121 A. 657 (1923); *State* v. *Hamlin,* 47 Conn. 95, 118 (1879). The modern approach wholly abandons the common law terminology and provides that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. See W. LaFave

---

[1] The defendant is not arguing that the instruction erroneously defined accessorial liability. His only claim is that the instruction, as it relates to the crime of assault in the first degree, should not have been given at all. He does not challenge the applicability of the trial court's instruction on accessory liability as it applies to any of the remaining charges.

& A. Scott, Criminal Law (1972) § 63, p. 501; see also Model Penal Code (1985) § 2.06, comment 6. Connecticut has taken the same approach through General Statutes § 53a-8.[2] See *State* v. *Baker,* 195 Conn. 598, 608, 489 A.2d 1041 (1985); *State* v. *Raffone,* 161 Conn. 117, 128, 285 A.2d 323 (1971). It is well established in this state that there is no such crime as "being an accessory." *State* v. *Foster,* 202 Conn. 520, 528, 522 A.2d 277 (1987). Rather, the accessory statute, General Statutes § 53a-8, merely provides an alternative under which criminal liability for the underlying substantive crime may be proved. *State* v. *Harris,* 198 Conn. 158, 163, 502 A.2d 880 (1985). The law in this state clearly holds that the fact that the defendant was not formally charged as an accessory does not preclude his being so convicted. *State* v. *Crump,* 201 Conn. 489, 493, 518 A.2d. 378 (1986); *State* v. *Johns,* 184 Conn. 369, 373–74 n.7, 439 A.2d 1049 (1981); *State* v. *Greene,* 11 Conn. App. 575, 583–84, 528 A.2d 855 (1987). " ' "[A] defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial liability." *State* v. *Fleming,* 198 Conn. 255, 268 n.15, 502 A.2d 886, cert. denied, 465 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).' "[3] *State* v. *Rice,* 25

---

[2] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] To establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another, the state must prove criminality of intent and community of unlawful purpose. *State* v. *McCalpine,* 190 Conn. 822, 832, 463 A.2d 545 (1983); *State* v. *Teart,* 170 Conn. 332, 336, 365 A.2d 1200 (1976). The mental state of an aider and abettor incorporated in General Statutes § 53a-8 does not require that the accused know of or endorse every act of his coparticipant in crime. *Parham* v. *Manson,* 500 F. Sup. 551, 558 (D. Conn. 1980); see *State* v. *Parham,* 174 Conn. 500, 506–508, 391 A.2d 148 (1978).

Conn. App. 646, 649, 595 A.2d 947 (1991), quoting *State* v. *Hopkins,* 25 Conn. App. 565, 568–69, 595 A.2d 911 (1991).

On appeal, the defendant contends that the trial court improperly instructed the jury on the theory of accessory liability because, like the defendant in *State* v. *Steve,* supra, he premised his whole defense on the belief that he was being charged solely as a principal and not as an accessory and that he did not have notice that the state would request an instruction on accessory liability. We disagree and conclude that this case is more analogous to *State* v. *Hopkins,* supra, where this court upheld the defendant's conviction as an accessory, than to *State* v. *Steve,* supra.

"In *State* v. *Steve,* supra, 40, the state had alleged in both its substitute information and its bill of particulars that the defendant was being prosecuted as a principal. In addition, the state orally affirmed, pursuant to the defendant's request, that the defendant was the principal with regard to the charges. Id., 41–42. Only after the state had finished presenting evidence in its case-in-chief did the defendant himself testify that another person had actually committed the crime. On appeal, this court concluded, and the Supreme Court affirmed, that the trial court improperly charged the jury on accessorial liability. In reaching this conclusion, the Supreme Court determined that the court's instruction was improper because it was 'not in substantial conformity with either the allegations in the bill of particulars or the evidence in the state's case-in-chief . . . .' Id., 46." *State* v. *Hopkins,* supra, 568.

In *State* v. *Hopkins,* supra, the defendant, who was charged as a principal, withdrew his request for a bill of particulars regarding the original information[4] and

---

[4] This withdrawal was without prejudice.

did not submit a request for a bill of particulars after the state filed its substitute information. Moreover, the defendant was in possession of information that should have alerted him to the increased possibility that he could be convicted as an accessory. Specifically, the defendant heard the victim testify that the defendant held him while the defendant's companion attacked him. Additionally, the defendant obtained, through pretrial discovery, a copy of the police incident report that indicated that the defendant was not the individual who inflicted the wounds on the victim. Id., 569–70.

Here, the state initially charged the defendant as an accessory to the crime of assault in the first degree and alleged that the defendant "intentionally aided one Timothy Dobson, while the latter, with intent to cause serious physical injury to one John Roman, did cause serious physical injury to the said John Roman . . . in violation of Section 53a-59 (a) (1) and Section 53a-8 of the Connecticut General Statutes." The state filed an amended information, in response to the defendant's motion for a bill of particulars,[5] in which it charged the defendant as a principal with the crime of assault in the first degree and alleged that the defendant "with intent to cause serious physical injury to one John Roman, did cause serious physical injury to said John Roman . . . in violation of Section 53a-59 (a) (1) of the Connecticut General Statutes." In its charge to the jury, the trial court instructed on accessory liability.[6]

At the hearing on the motion for the bill of particulars the state explained, on three occasions, that it was

[5] "The function of a bill of particulars under Connecticut practice is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense." *State* v. *Stepney,* 191 Conn. 233, 240, 464 A.2d 758 (1983), cert. denied. 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

[6] Although the defendant failed to take exception to the charge at trial, we will review this claim on appeal. *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Steve,* 208 Conn. 38, 40, 544 A.2d 1179 (1988).

alleging that the defendant was the principal, but that it was anticipating testimony in support of an accessory theory of liability, and thus would request an instruction on accessorial liability if such evidence did in fact materialize at trial.[7] The prosecutor based this claim of anticipated accessorial liability testimony on the fact that such testimony had been adduced at the trial of Timothy Dobson, one of the other individuals previously tried in connection with John Roman's shooting.

We conclude that the evidence adduced through the victim's testimony did in fact support the trial court instruction on accessorial liability. The victim testified that, at the time he was shot, he was alone in the kitchen with the three assailants. He further testified that the shorter black man turned off the lights, that about four seconds later he was shot twice, once in each leg, and that it was the tall "black dude" who shot him with an Uzi. This testimony reasonably supports the conclusion that the defendant was not the principal, but rather an aider or abettor. Thus, not only was the defendant given adequate notice that the state would be seeking an instruction on accessory liability, there was substantial evidence presented at trial in support

[7] The state first explained that it was "alleging that [the defendant] was the shooter in that the shots were fired from the direction from where the witness observed the defendant standing." The prosecutor continued, "[n]ow there would also be testimony that the lights were off, so the state would also be submitting that on an accessory theory should the jury believe that he was an accomplice and aider and abettor to one of the others." The prosecutor also stated that "under the circumstances, depending on how the evidence comes out, the jury may reasonably believe that he was an aider and abettor if they don't believe he was the shooter. So the state is also going to be requesting that instruction again should the facts indicate that there is some question about whether he is the shooter or not." Finally, the state commented, "I am indicating orally what, just so there is no question about it, that the state's position is he is a principal, and the facts are going, as I believe they are going to come out, would suggest that even an aiding and abetting charge may be appropriate."

of the theory that the defendant was an accessory to assault in the first degree. The trial court's instruction on accessory liability as it relates to the charge of assault in the first degree was proper.

## II

The defendant next contends that the trial court improperly admitted the testimony of a state's witness as evidence of an admission by silence and instructed the jury that the defendant's failure to respond to an accusatory statement could be considered as an admission of guilt. We disagree.

The following facts are relevant to this claim. During its case-in-chief, the state called Rose Roman Crawley as a witness. Crawley testified that in the summer of 1988 she encountered the defendant in Rite-Aid Pharmacy in downtown Bridgeport, and that she initiated a conversation with him.[8] She further testified that she told him that the incident involving her brother's shooting was "messed up," in response to which he replied that he did not shoot her brother. Crawley then accused the defendant of being there when her brother was shot. He made no response.[9] The

---

[8] The state then asked the witness what the defendant had said to her during this encounter. Defense counsel objected, arguing that there had been no disclosure of any statement that was claimed to have been made by the defendant. The trial court overruled the objection, stating that there was no rule of practice requiring that a defendant's statement to civilians be disclosed, and instructed the witness to answer the question.

[9] The following colloquy occurred:

"Q. Didn't you just indicate to the court that you had a conversation with [the defendant] concerning the shooting of your brother?

"A. Yeah. But I spoke to him first.

"Q. What did you say?

"A. I told him that this was messed up, what happened to my brother.

"Q. What did he say?

"A. He said he didn't shoot him.

"Q. And then what did you tell him? What did you say to him after he said to you he didn't shoot your brother?

state offered this conversation and the defendant's failure to respond to Crawley's accusation as an admission by silence.

The state submitted a request to charge that sought, inter alia, an instruction on silence as an admission of guilt. The defendant objected on the ground that there was insufficient evidence to substantiate such a charge. He argued that there was no evidence presented that the defendant actually heard what was said and that he may have been walking by the witness at the time she addressed him. The trial court concluded that because this was a "back and forth conversation," the exchange indicated that it was within the defendant's earshot and that the defendant "wasn't walking by in a pharmacy." The court overruled the defendant's objection.

On appeal, the defendant argues that there was no information provided that would demonstrate that the defendant either heard or understood Crawley's statement that he was present when the victim was shot. Alternatively, the defendant argues that even if he had heard and comprehended the statement, the statement was not accusatory in nature. Specifically, the defendant claims that it did not accuse him of aiding or abetting or soliciting others to shoot John Roman but rather accused him of no more than being present at the scene of a crime.

"The rule in Connecticut is that when a statement, accusatory in nature, made in the presence and hear-

---

"A. That you were there.
"Q. And what did he respond?
"A. He didn't say anything.
"Q. He didn't say anything to that did he?
[Pause]
"Q. Did he?
"A. No."

ing of an accused, is not denied or explained by him, it may be received into evidence as an admission on his part. *State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d. 550 (1986); *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977); *State* v. *Yochelman,* 107 Conn. 148, 152, 139 A. 632 (1927)." *State* v. *Daniels,* 18 Conn. App. 134, 138, 556 A.2d 1040 (1989); see also *State* v. *Torrice,* 20 Conn. App. 75, 90, 564 A.2d 330 (1989), cert. denied, 213 Conn. 809, 568 A.2d 794 (1990). "Evidence of silence in the prearrest setting may be used either as an admission or for impeachment purposes. *State* v. *Leecan,* supra. The theory underlying the rule is that the natural reaction of an innocent person to an untrue accusation is promptly to deny, contradict or otherwise object to it; 29 Am. Jur. 2d, Evidence §§ 633, 638; and that the failure of the person to contradict or reply is probative of his adoption of the assertion. *Obermeier* v. *Neilsen,* 158 Conn. 8, 11, 255 A.2d 819 (1969)." *State* v. *Daniels,* supra, 138–39.

Although the doctrine of admission by silence has been criticized by commentators; see C. Gamble, "The Tacit Admission Rule: Unreliable and Unconstitutional—A Doctrine Ripe for Abandonment," 14 Ga. L. Rev. 27 (1979); note, "Tacit Criminal Admissions," 112 U. Pa. L. Rev. 210 (1963); our Supreme Court has not abandoned the doctrine but has joined other states in establishing standards regulating the admissibility of evidence of a defendant's prearrest silence in the face of accusation. In Connecticut, "[t]he trial judge must decide, as a preliminary matter, whether proffered evidence of a defendant's silence in the face of accusation is, under the circumstances, sufficiently probative of assent by the defendant to the accusatory statement made in his presence. See *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 315, 268 A.2d 639 (1970); *Obermeier* v. *Neilsen,* supra. The inference of assent

may be made only when no other explanation is equally consistent with silence. *State* v. *Vitale,* 197 Conn. 396, 405, 497 A.2d. 956 (1985); *State* v. *Harris,* 182 Conn. 220, 229, 438 A.2d 38 (1980). Relevant considerations in determining the proper explanation for the actor's silence are whether the actor heard, understood, and comprehended the statement to which he did not respond; *State* v. *Vitale,* supra, 406; whether the circumstances naturally called for a reply from him; id; and whether there were present physical or emotional factors which render the inference of assent unreliable. *State* v. *Harris,* supra." *State* v. *Daniels,* supra, 139–40.

Initially, we note that ordinarily the trial court's rulings on the admissibility of evidence are accorded great deference and will be disturbed on appeal only upon a showing of clear abuse of discretion. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 222, 544 A.2d 623 (1988); *State* v. *Erhardt,* 17 Conn. App. 359, 553 A.2d 188 (1989). In reviewing the trial court's decision to admit Crawley's testimony, we, therefore, consider whether the trial court could reasonably have concluded, on the basis of the evidence before it, that the fact of the defendant's silence was sufficiently probative of assent to an accusatory statement to permit its admission into evidence as an admission by silence. See *State* v. *Daniels,* supra, 140.

The first question that must be addressed is whether Crawley's statement was sufficiently accusatory in import to call naturally for a response from the defendant. As recognized in *State* v. *Daniels,* supra, the incriminating content of a statement is to be considered in determining whether an ordinary person would deny it. See *United States* v. *Schulman,* 624 F.2d 384 (2d Cir. 1980); *United States* v. *Flecha,* 539 F.2d 874 (2d Cir. 1976). In the context of the conversation between Crawley and the defendant, it is reasonable for the trial court to have concluded that the statement

"you were there" carried sufficiently accusatory implications to call for a response from the defendant. The statement expressed the declarant's belief that the defendant had been involved in her brother's shooting. Such an expression, in this context, can clearly be characterized as accusatory.

Additionally, the record reveals sufficient evidence from which the trial court could reasonably have concluded that the defendant heard, understood and comprehended Crawley's statement. Crawley testified that the conversation with the defendant occurred indoors at a pharmacy in Bridgeport, that she initiated the conversation by stating that what had happened to her brother was "messed up," and that the defendant had responded to her statement. She further testified that this comment immediately preceded her statement that the defendant was present at the time her brother was shot. The defendant's response that he did not shoot Crawley's brother supports the conclusion that he heard her comment and that he clearly and correctly understood it. We, therefore, conclude that the trial court did not abuse its discretion in admitting this testimony as an admission of guilt.[10]

## III

The defendant next claims that the state failed to prove beyond a reasonable doubt that John Roman suffered a "serious physical injury" within the meaning of General Statutes §§ 53a-59 (a) (1) and 53a-3 (4) when he was shot. He contends that because the state failed to prove an essential element of the crime of assault in the first degree, the trial court improperly refused to grant his motion for judgment of acquittal of that charge.[11] The defendant argues that no evidence

[10] It must also be noted that the defendant does not challenge the accuracy of the trial court's instructions on admissions by silence.

[11] When ruling on a defendant's motion for judgment of acquittal the trial court must first view the testimony and evidence presented at trial in the

was introduced that would demonstrate that, as a result of the assault, the victim faced a substantial risk of death, was seriously disfigured, lost or suffered an impairment of any bodily organ or faced serious impairment to his health. He further argues that the victim's scars alone cannot sustain a conviction of assault in the first degree. We disagree.

General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) with intent to cause serious physical injury to another person, he causes such injury to such person or a third person by means of a deadly weapon or a dangerous instrument . . . ." Serious physical injury is defined by § 53a-3 (4) as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." Physical injury, however, is defined as merely "impairment of physical condition or pain." General Statutes § 53a-3 (3).

Although it may be difficult to distinguish between serious physical injury and physical injury, such a distinction must be drawn here. A person may be found guilty of assault in the first degree under General Statutes § 53a-59 (a) (1) only if he causes serious physical injury to another person. See *State* v. *Rossier*, 175 Conn. 204, 207, 397 A.2d 110 (1978).

"Connecticut courts have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction.

light most favorable to the state, and then determine whether any rational trier of fact could conclude, on the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence establishes guilt beyond a reasonable doubt. *State* v. *Scielzo*, 190 Conn. 191, 197, 460 A.2d 951 (1983), relying on *Jackson* v. *Virginia*, 443 U.S. 307, 317–18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Whether we review the findings of the trial court or the verdict of a jury, our underlying task is the same. *State* v. *Evans,* 203 Conn. 212, 238, 523 A.2d 1306 (1987). We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. *State* v. *Owens,* 25 Conn. App. 181, 192, 594 A.2d 991 (1991). We then decide whether, on the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991), and cases cited therein."[12] *State* v. *Johnson,* 26 Conn. App. 433, 435, 602 A.2d 36 (1992).

Here, the state introduced copies of Roman's hospital records in support of its allegations of serious physical injury. It is undisputed that these records and the trial testimony reveal that Roman was shot twice, once in each leg, remained in the hospital for at least one night, suffered pain, was required to remain on crutches for over two months and was left with scars on both legs as a result of the gunshot wounds.[13] The scars were shown to the jury.

[12] Both the federal and state constitutions guarantee that a criminal defendant may be convicted only on proof of each element of the offense beyond a reasonable doubt. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Little,* 194 Conn. 665, 671, 485 A.2d 913 (1984); *State* v. *Smith,* 194 Conn. 213, 217, 479 A.2d 814 (1984). Jurors are not permitted to resort to speculation or conjecture. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984).

[13] The defendant's argument that because the victim has recovered full use of his legs, he has not suffered a serious physical injury is without merit. Because General Statutes § 53a-3 (4) does not require that the injury sustained be permanent in nature, the fact that the victim regained full use

Despite the difficulty in drawing a precise line where "physical injury" leaves off and "serious physical injury" begins, we cannot say that the jury could not reasonably have found that he suffered serious physical injury. The trial court, therefore, properly denied the defendant's motion for judgment of acquittal as to the charge of assault in the first degree.

## IV

The defendant next argues that the trial court improperly admitted a statement of a witness for substantive purposes when the statement contained information that was not based on the declarant's personal knowledge. The trial court admitted into evidence, over the defendant's objection, a redacted version of the signed statement of Maria Roman in which she indicated that she knew the defendant and that he was present in the apartment at the time her brother was shot. The defendant contends that because Maria Roman testified at trial that it was her sister who told her who the defendant was, her identification of the defendant in the statement was not based on personal knowledge, and thus the statement was not admissible for substantive purposes under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). We disagree.

The admission of prior written statements for substantive purposes is governed by *State* v. *Whelan*, supra, 753. *State* v. *Grant*, 221 Conn. 93, 96–103, 602 A.2d 581 (1992). In *Whelan*, the Supreme Court ruled that a written statement is admissible for substantive

---

of his legs does not preclude a finding of serious physical injury. See *State* v. *Anderson*, 16 Conn. App. 346, 357, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 453 (1988); *State* v. *Dickson*, 10 Conn. App. 462, 466, 523 A.2d 935 (1987).

purposes if the following conditions have been satisfied: (1) the statement is signed by the declarant; (2) the declarant has personal knowledge of the facts contained within the statement; and (3) the declarant testifies at trial and is subject to cross-examination. *State* v. *Whelan,* supra, 753.

Here, the defendant does not challenge the first or the third requirement. It is undisputed that the statement is written and signed by the declarant. Additionally, the witness testified at trial and was subject to cross-examination about her statement to the police. The defendant asserts only that the second requirement, that the declarant has personal knowledge of the facts contained within the statement, has not been satisfied, and relies on *State* v. *Green,* 16 Conn. App. 390, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988), for this proposition.

The specific components of the personal knowledge prong of *Whelan,* supra, were recently interpreted by our Supreme Court in *State* v. *Grant,* supra. The *Grant* court concluded that the "personal knowledge" requirement of *Whelan* "does not require that the declarant have witnessed the commission of the crime that is the subject of the prior inconsistent written or recorded statement." *State* v. *Grant,* supra, 99. As the Supreme Court noted in *State* v. *Grant,* supra, and this court noted in *State* v. *Green,* supra, the declarant must have personal knowledge of the facts contained within the statement sought to be introduced. In order to determine whether the declarant has the requisite personal knowledge we look to the statement itself; see *State* v. *Grant,* supra, 101–102; *State* v. *Green,* supra, 397–98; and consider whether the statement indicates that the declarant personally knew the truth of the contents of the statement. The declarant need not have personally witnessed the commission of the crime that

is the subject of the prior statement in order to have personal knowledge of the facts contained within his statement. *State* v. *Grant,* supra, 99. His presence or absence at the scene of the crime is merely one factor that may be considered in determining whether the declarant has such personal knowledge.

Our review of the redacted version of the statement supports a finding that the declarant had personal knowledge of the facts underlying her statement.[14] It is undisputed that the declarant was present at the scene of the crime and had an opportunity to observe the three assailants. In her statement to the police, Maria Roman indicated that she had known the defendant for approximately two and one-half years from the PT Barnum project where they both had lived. These statements clearly demonstrate that she had independent knowledge as to the defendant's identity. There is sufficient indicia of personal knowledge in the statement to support the trial court's conclusion that the statement satisfied the *Whelan* criteria. Thus, the trial court properly admitted the declarant's statement for substantive purposes.

---

[14] In the redacted statement, the declarant recounted her knowledge of the defendant as follows:

"Q. Who was the third suspect that came into the apartment?

"A. The Puerto Rican one.

"Q. Did you ever see any of these suspects before?

"A. Yes, the Puerto Rican one, Manuel.

"Q. Where do you know him from?

"A. We used to live in PTB and I knew him from there.

"Q. How long have you known him?

"A. For a good two and one-half years.

"Q. Do you know where he lives?

"A. He used to live in building eleven on the first floor . . . .

"Q. Describe Manuel.

"A. He's around five feet, five inches tall, he has pimples all over his face, real short hair, heavy set, about eighteen or nineteen years old; he was wearing blue jeans and a black hooded sweat shirt.

"Q. Did he have a weapon on him?

"A. Yes. It looked like a thirty-eight, black."

## V

The defendant's final claim is that the state failed to introduce sufficient evidence to prove beyond a reasonable doubt that he acted as a principal in the crime of assault in the first degree. The crux of the defendant's argument is that the victim, who was the only person in the room with the three assailants at the time he was shot, testified that it was the tall "black dude" who shot him, and no other evidence was presented that the defendant was the principal offender. We disagree with the defendant.

No exception to this instruction was taken at trial. The defendant, therefore, seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Because there is abundant authority that states that claims of insufficiency of the evidence fall within the ameliorative penumbra of *State* v. *Golding,* supra; see *State* v. *Aleksiewicz,* 20 Conn. App. 643, 645 n.1, 569 A.2d 567 (1990); we review this claim.

As stated previously, there is no such crime as "being an accessory." *State* v. *Foster,* supra. Rather, the accessory statute; General Statutes § 53a-8; merely provides an alternative under which criminal liability for one underlying substantive crime may be proved. See *State* v. *Baker,* supra. Where a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision on which the trier may have relied. *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969); *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); *State* v. *Asherman,* 193 Conn. 695, 730, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State*

v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983). " 'The trial court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." *State* v. *Williams,* 202 Conn. 349, 364, 521 A.2d 150 (1987), quoting *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982).

At trial, the state presented evidence that both of the bullets that struck the defendant were fired from the same weapon. The state also presented evidence indicating that the gun in the possession of the tall black male could not have been the weapon that fired the bullets that struck the defendant. Moreover, Roman testified that, at the time the lights were turned out, the short black male was standing approximately ten feet to his left, the tall black male was standing about five feet to his right and the defendant was standing in the middle of the room, twelve feet in front of him. He further testified that when he was struck he fell backwards after seeing flashes coming from the middle of the room, where the defendant was standing. On the basis of these facts, we conclude that sufficient evidence was presented from which the trial court and the jury could have reasonably concluded that the defendant acted as a principal in the assault against Roman. The trial court, therefore, properly instructed the jury that the defendant could be found guilty of assault in the first degree as a principal.

The judgment is affirmed.

In this opinion the other judges concurred.

## MICHAEL CECI *v.* NATIONAL INDEMNITY COMPANY (10112)

DALY, O'CONNELL and FOTI, Js.

Argued December 2, 1991—decision released February 18, 1992

*Steven D. Jacobs,* with whom, on the brief, were *Richard L. Jacobs* and *Rachel M. Dufault,* law student intern, for the appellant (plaintiff).

*Daniel P. Scapellati,* with whom, on the brief, was *John W. Lemega,* for the appellee (defendant).

DALY, J. The plaintiff, Michael Ceci, appeals from the trial court's decision confirming an arbitration award rendered in favor of the defendant insurance company. The trial court concluded that because the policy was unambiguous, the plaintiff was not covered

by the policy issued to his employer, Victor Ceci Refuse, Inc., a family owned business. We affirm the judgment of the trial court.

The trial court found the following facts. On September 13, 1986, the plaintiff was a pedestrian when he was struck by an underinsured motorist. He requested uninsured motorist benefits pursuant to a business automobile policy of insurance issued by the defendant to Victor Ceci Refuse, Inc. The policy was effective from July 15, 1986, through July 15, 1987, and covered three pickup trucks and two trucks owned by the corporation. The policy identified Victor Ceci, Inc., as the "named insured" and did not identify any individual officers or employees. The policy classified the insured's business as a corporation.

At issue in this case are the provisions of the insurance policy that dealt with uninsured motorist coverage. According to these provisions, the defendant would pay for damages caused by an uninsured vehicle. Individuals covered by this provision included: "(1) you or any family member (2) anyone else occupying a covered auto or a temporary substitute for covered auto." The policy defined " 'Family member' " as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." The policy defined "occupying" as "in, upon, getting in, on or off."

The plaintiff submitted his claim for uninsured motorist benefits to an arbitration panel. The arbitrators denied the plaintiff's claim for coverage, finding that because the plaintiff was neither a family member of the named insured nor occupying any of the insured vehicles, he was not an insured under the policy. The plaintiff filed an application to vacate the arbitration award. The defendant asserted a counterclaim seeking to confirm the decision of the arbitration panel. The

trial court rendered judgment in favor of the defendant by confirming the arbitration award. The plaintiff appealed that decision to this court.

The plaintiff contends that the trial court incorrectly concluded that the policy was unambiguous. He argues that because the policy was issued to a corporation, the language referring to coverage of family members created an ambiguity in the policy's coverage that should be resolved in his favor. The plaintiff argues that the provisions dealing with uninsured motorists are ambiguous because the language indicates that these provisions covered persons and their families, unlike the rest of the policy which involves the named insured corporation. The plaintiff argues that the references to family members and bodily injuries apply only to persons and not to a corporation. Thus, according to the plaintiff, because the policy language has two different definitions of who is insured, it is ambiguous and should be construed in favor of the plaintiff. We disagree.

We begin by noting that an ambiguous provision in an insurance policy is to be construed in favor of the insured. *Schultz* v. *Hartford Fire Ins. Co.,* 213 Conn. 696, 702, 569 A.2d 1131 (1990). Before an insured can take advantage of this principle, however, there must be a finding that the insurance policy provisions were in fact ambiguous. *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 583–84, 573 A.2d 699 (1990). The trial court's conclusion that the policy provision was not ambiguous was a legal conclusion concerning the construction of the contract, which is subject to de novo review on appeal. *Aetna Life & Casualty Co.* v. *Bulaong,* 218 Conn. 51, 58, 588 A.2d 138 (1991).

Under Connecticut law, the named insured refers only to the name actually appearing on the insurance

policy. *Testone* v. *Allstate Ins. Co.,* 165 Conn. 126, 129–30, 328 A.2d 686 (1973). *Testone* involved an employee injured by an uninsured motorist during the course of his employment. The employee sought coverage under the employer's uninsured vehicle provisions. The named insured was a corporation and the policy protected "against damages caused by an uninsured vehicle to '(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either . . . .' " Id. The court determined that he was not entitled to protection under the uninsured policy provision. Id., 130. The court looked to the language of the policy and held that because the employee was not a "designated insured," he was not covered by the corporation's policy. It is important to note that our Supreme Court did not find that the policy language referring to a "spouse and relatives" of the named insured, the corporation, to be ambiguous or misleading.

According to the language of the policy in this case, Victor Ceci Refuse, Inc., was the named insured. The policy did not list any other people as designated insureds. The policy specifically stated that "you" and "your" referred to the "name insured," Victor Ceci Refuse, Inc. Because the plaintiff was not the named insured, to be entitled to uninsured motorist coverage, he must satisfy one of the provisions referring to who is insured. The resolution of this case turns on whether the language referring to "you or any family member" applied to the plaintiff in this case.

Neither our Supreme Court nor this court has interpreted language referring to a "family member" in a policy where the named insured is a corporation. A corporation is a distinct legal entity that acts only through its agents. *Lieberman* v. *Reliable Refuse Co.,* 212 Conn. 661, 673, 563 A.2d 1013 (1989). Although the plaintiff is the brother of the owner of the corporation, he cannot

be related to a corporation. The inclusion of language concerning family members in a policy issued to a corporation does not make the policy ambiguous. Because it is clear that the plaintiff could not be related to the corporation, there was no ambiguity that would entitle him to coverage based on the presumption favoring an insured where an insurance policy is ambiguous.

The plaintiff's status as an employee of the named insured corporation also fails to bring him within the uninsured motorist provision for family members. We adopt the majority position that employees do not qualify for uninsured motorist benefits as "family members" of a corporation by which they are employed. *Hogan* v. *Mayor & Aldermen of Savannah,* 171 Ga. App. 671, 672, 320 S.E.2d 555 (1984); *Kaysen* v. *Federal Ins. Co.,* 268 N.W.2d 920, 923–24 (Minn. 1978); *Cutter* v. *Maine Bonding & Casualty Co.,* 133 N.H. 569, 573, 579 A.2d 804 (1990); *Giambri* v. *Government Employees Ins. Co.,* 170 N.J. Super. 140, 143, 405 A.2d 872 (1979), aff'd, 174 N.J. Super. 162, 415 A.2d 1202 (App. Div. 1980) (per curiam); *Buckner* v. *Motor Vehicle Accident Indemnity Co.,* 66 N.Y.2d 211, 214, 486 N.E.2d 810, 495 N.Y.S.2d 952 (1985); *Dixon* v. *Gunter,* 636 S.W.2d 437, 440–41 (Tenn. App. 1982).

The reasoning for this rule as explained by the Court of Appeals of New York in *Buckner* v. *Motor Vehicle Accident Indemnity Co.,* supra, is persuasive. In that case, the plaintiff, a child of the sole shareholder of a family owned corporation was struck while riding his bicycle by a hit-and-run driver. The plaintiff had worked part-time for the corporation but was not involved in the corporation's business when he was injured. The plaintiff sought uninsured motorist benefits under the corporation's insurance policy. The language of the policy was very similar to the language in the policy at issue in this case. The court noted that an average person reading the entire policy would conclude that

a corporation could not have family members related by blood, marriage or adoptions. *Buckner* v. *Motor Vehicle Accident Indemnity Co.*, supra, 214. The court noted that its construction of this provision concerning a family member of a corporation did not render the uninsured vehicle coverage without meaning because the other provision covered "any person while occupying an automobile owned by the corporation . . . ." Id., 215. In this case, the uninsured vehicle provision also covers other persons who occupy a covered automobile, so our construction of the inapplicability of the family member provision does not leave the uninsured vehicle provision without meaning.

The plaintiff argues that the family member provision of the insurance policy must be construed to cover his claim. His argument is based on the principle that " '[e]very provision [of a contract of insurance] is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it.' " *A.M. Larson Co.* v. *Lawlor Ins. Agency, Inc.*, 153 Conn. 618, 622, 220 A.2d 32 (1966), quoting *Downs* v. *National Casualty Co.*, 146 Conn. 490, 495, 152 A.2d 316 (1959). The policy in this case was issued to a corporation, not an individual person. The endorsement concerning uninsured motorist coverage was to be read in light of the entire policy. It is impossible to give any reasonable meaning to "family member" that would qualify the plaintiff as a family member of a corporation. Construing this insurance policy as a layperson would understand it; *Cody* v. *Remington Electric Shavers*, 179 Conn. 494, 497, 427 A.2d 810 (1980); there is no reasonable interpretation of the family member provision that would entitle the plaintiff to recover under this policy.

When interpreting an insurance policy, "[a] court will not torture words to import ambiguity where the ordi-

nary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Downs* v. *National Casualty Co.*, supra, 494–95. The language of the uninsured motorist provision was clear and unambiguous. We will not torture the meaning of family member to accept the plaintiff's claim that he was related to the corporation.

We conclude that the trial court's decision confirming the arbitration panel's ruling was proper.

The judgment is affirmed.

In this opinion the other judges concurred.

STATE OF CONNECTICUT *v.* JOHN ANZIANO
(10041)

DALY, FOTI and FREEDMAN, Js.

Argued January 7—decision released February 18, 1992

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Juliett L. Crawford,* assistant state's attorney, for the appellant (state).

*Patricia A. King,* with whom, on the brief, was *Thomas P. Cadden,* for the appellee (defendant).

FOTI, J. The state appeals, with permission of the trial court, from the judgment rendered dismissing with prejudice the charges against the defendant of possession of narcotics in violation of General Statutes § 21a-279 (a), sale of illegal drugs in violation of General Statutes § 21a-278 (b), conspiracy to sell illegal drugs in violation of General Statutes §§ 53a-48 and 21a-278 (b), possession of less than four ounces of marihuana in violation of General Statutes § 21a-279 (c), and destruction of evidence in violation of General Statutes § 54-33e. Prior to trial, the defendant moved to suppress all evidence obtained pursuant to a search warrant executed on January 22, 1990. After the court granted the motion on October 5, 1990, the state entered a nolle on each charge. The state then filed a motion to dismiss the case with prejudice pursuant to General Statutes § 54-96 and Practice Book § 815,[1] which was granted on February 22, 1991.

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

Practice Book § 815 provides: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information:

The state alleges that under the "totality of circumstances" test; *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991); the affidavit in support of the application for the search and seizure warrant provided a substantial factual basis for the issuing authority to conclude that probable cause was demonstrated. We agree.

The facts are not disputed. On January 22, 1990, detectives of the Meriden police department obtained a search warrant[2] for the residence and vehicles of the

"(1) Defects in the institution of the prosecution including any grand jury proceedings;

"(2) Defects in the indictment or information including failure to charge an offense;

"(3) Statute of limitations;

"(4) Absence of jurisdiction of the court over the defendant or the subject matter;

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or indictment or the placing of the defendant on trial;

"(6) Previous prosecution barring the present prosecution;

"(7) Claim that the defendant has been denied a speedy trial;

"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid; or

"(9) Any other grounds."

[2] The affidavit in support of the application for the search and seizure warrant is as follows:

"1. That Detective William Staton and Detective Trevor Thorpe are regular members of the Meriden Police Departments Narcotics Division with a combined total of about 23 years of police experience between them. The affiants Thorpe and Staton have investigated numerous narcotic cases arrests and convictions as well as numerous seizures of illegal narcotic substances and paraphernalia. The affiants have attended various schools and seminars teaching investigative techniques in narcotic investigation and as the result of their training and experiences are familiar with the methods and practices of illegal drug violators as well as the deceptions used by them to avoid police detection.

"2. That in the early 1987 The Meriden Police Department Narcotic division began to review information from its 634-DRUG hotline indicating that a white male named John Anziano living at 124 Arch Parkway in Meriden Connecticut was a local cocaine dealer. This information was received from various informants and other police officers during the following months until on 10-12-87 Affiant Thorpe along with other detectives observed Mr. Anziano run from a car into the woods in the Baldwins Pond area of Meriden and subsequently recovered 18 grams of cocaine as well as several baggies

defendant, which called for the seizure of illegal drugs, among other things. On that same day, the warrant

of marijuana in the wooded area where Anziano was seen to run. Anziano had not been seen to actually drop the illegal drugs on that occasion and was not arrested. At this time he was operating a 1973 Ford color blue bearing Connecticut Reg number 925BVS which he is still the registered owner of.