STATE OF CONNECTICUT *v.* LeVERN GRANT
(14204)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

94

Argued November 7, 1991—decision released February 4, 1992

*Timothy Patrick Brady,* with whom were *Steven D. Brown* and, on the brief, *Gregory T. D'Auria,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom were *James G. Clark,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

GLASS, J. After a jury trial, the defendant, LeVern Grant,[1] was convicted of murder in violation of General Statutes § 53a-54a.[2] The trial court sentenced the

---

[1] According to the clerk's office, the correct spelling of the defendant's first name is "LeVern," as opposed to "Laverne," which appears in the judgment.

[2] "[General Statutes] Sec. 53a-54a. MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

defendant to a term of fifty years imprisonment. From this judgment of conviction the defendant appeals, claiming that the trial court improperly: (1) admitted as substantive evidence, at both the probable cause hearing and the trial, tape-recorded statements that two witnesses made to the police; (2) made a finding of probable cause when the probable cause hearing was fatally flawed by the admission of the tape-recorded statements as substantive evidence; (3) instructed the jury that it could draw an adverse inference from the defendant's failure to produce certain witnesses; and (4) failed to reinstruct the jury, pursuant to the defendant's request, that certain testimony could be used solely for impeachment purposes. We affirm the judgment of conviction.

On September 28, 1989, at approximately 10:15 p.m., Paul Albright was fatally wounded by a gunshot on or near the premises located at 83 Hallock Street in New Haven. Subsequent investigation of the shooting led the New Haven police to Kevin Billie and Rodney Rice. Billie and Rice gave statements to the police on October 1, 1989, and October 3, 1989, respectively. The statements, which were tape-recorded and transcribed, implicated the defendant in the Albright shooting. Relying on the statements of Billie and Rice and other information developed in the course of their investigation, the police arrested the defendant on October 21, 1989, and charged him with the murder of Albright.

A probable cause hearing was conducted on December 7, 1989, at which both Billie and Rice testified. Billie and Rice admitted having given statements to the police

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

and acknowledged that the recordings accurately reflected their statements. Nonetheless, both men testified that their earlier statements implicating the defendant in the Albright shooting were false. The state then sought to introduce the tape recordings of the statements as substantive evidence under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant objected, relying on *State* v. *Green,* 16 Conn. App. 390, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988), to argue that a witness' prior inconsistent statement is inadmissible as substantive evidence unless it is based on personal knowledge of the criminal conduct with which the defendant is charged. The trial court determined that there was "substantial reliability" for the statements and admitted the tape recordings as substantive evidence. Relying on the statements of Billie and Rice and other evidence adduced at the hearing, the court concluded that there was probable cause to hold the defendant for trial for the Albright murder.

The defendant's trial commenced on October 9, 1990. When Rice was called to testify,[3] the state sought to introduce the typewritten transcript of his statement as a past recollection recorded. The court admitted the transcript on this basis over the defendant's objection. Thereafter, Rice again denied the truthfulness of his prior statement and the state successfully sought to have the tape-recorded statement admitted as substantive evidence under *State* v. *Whelan,* supra. As he had done at the probable cause hearing, the defendant objected to the admission of Rice's tape-recorded statement on the basis of *State* v. *Green,* supra.

I

The defendant first claims that the trial court improperly admitted the out-of-court tape-recorded statements

---

[3] Billie did not testify at the trial.

of Billie and Rice as substantive evidence at both the probable cause hearing and the trial.[4] The defendant contends that because neither Billie nor Rice had personal knowledge of the criminal conduct with which the defendant was charged, the admission of their statements as substantive evidence was improper. The state argues that this court's decision in *State* v. *Whelan,* supra, does not require that a witness have direct personal knowledge of the crime. We agree with the state's reading of *Whelan,* and, accordingly, conclude that the trial court properly admitted as substantive evidence the prior inconsistent statements of Billie and Rice.

The substance of the statements was as follows. Billie told the police that the defendant told him the day before the shooting that he planned to shoot rival drug dealers who worked for "green-eyed Dave," and that he intended to "take [them] out" from the backyard across the street. Billie stated that he knew that Albright worked for "green-eyed Dave." Rice told the police that he was at the defendant's girlfriend's house near the scene of the crime shortly after the shooting. He observed the defendant in possession of an empty .38 automatic handgun. Rice stated that the defendant told him that he had shot Albright from across the street and then "jumped over fences and stuff" and ran to his girlfriend's house.

The defendant relies on *State* v. *Green,* supra, 397–98, in which the Appellate Court construed this court's holding in *State* v. *Whelan,* supra, 753. In *Green,* the Appellate Court concluded that, because "[the witness] was not at the scene of the crime and did not personally know whether the defendant participated in the

---

[4] We need not consider separately the admission at the trial of the transcript of Rice's tape-recorded statement as a past recollection recorded, since we conclude that the tape recordings were properly admitted as substantive evidence, and, thus, any error in the admission of the transcript was harmless.

[crime]''; id.; the trial court had improperly admitted as substantive evidence certain portions of a written, signed and sworn statement given to the police by a witness who had repudiated the truth of the statement at trial. The Appellate Court found the error harmless, however, and affirmed the defendant's conviction of robbery in the first degree and assault in the first degree.

In *State* v. *Whelan,* supra, we reviewed our continued adherence to the traditional rule prohibiting the use as substantive evidence of a prior inconsistent out-of-court statement of a nonparty witness. We rejected the traditional view and joined the growing number of jurisdictions that allow prior inconsistent statements as substantive evidence when the declarant takes the stand and is available for cross-examination. Id., 751–52. In deciding to abandon the common law rule, we relied on the assessment of various legal scholars and commentators that the reasons behind the rule do not apply when the witness testifies and is available for cross-examination: ''[W]hen the declarant is available for cross-examination the jury has the opportunity to observe him as he repudiates or varies his former statement. The cross-examination to which a recanting witness will be subjected is likely to be meaningful because the witness will be forced either to explain the discrepancies between the earlier statements and his present testimony, or to deny that the earlier statement was made at all. 'If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court.' . . . The jury can, therefore, determine whether to believe the present testimony, the prior statement, or neither. . . . Quite simply, when the declarant is in court, under oath, and subject to cross-examination before the factfinder concerning

both his out-of-court and in-court statements, 'the usual dangers of hearsay are largely nonexistent. . . .' " Id., 750–51. These considerations convinced us that "the prevailing reasons for refusing to allow any prior inconsistent statement to be used as substantive evidence are no longer valid." Id., 752. We concluded that "an exception to the hearsay rule is necessary to allow the trial court to admit for substantive purposes prior inconsistent statements *given under prescribed circumstances reasonably assuring reliability.*" (Emphasis added.) Id. We therefore adopted a rule allowing the substantive use of prior written inconsistent statements where the declarant: (1) has signed the statement; (2) has personal knowledge of the facts stated; and (3) testifies at trial and is subject to cross-examination. Id., 753. This court has interpreted that rule to apply to prior tape-recorded statements. Id., 754 n.9; see *State* v. *Alvarez,* 216 Conn. 301, 313, 579 A.2d 515 (1990).

The defendant, relying on *State* v. *Green,* supra, asserts that the statements of Billie and Rice do not satisfy the requirement set forth in *Whelan* that the declarant have "personal knowledge of the facts stated." We disagree. We conclude that the "personal knowledge" prong of the *Whelan* rule does not require that the declarant have witnessed the commission of the crime that is the subject of the prior inconsistent written or recorded statement.[5]

---

[5] Our decision in *State* v. *Almeda,* 211 Conn. 441, 560 A.2d 389 (1989), supports the interpretation we adopt today. In *State* v. *Almeda,* supra, 451–52, the defendant challenged the admission for substantive purposes under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), of a witness' prior inconsistent statement on the basis that the statement was not sworn. The witness had stated to police that she heard the defendant directly threaten the victim and the defendant then told her that he would kill the victim if the victim touched the defendant's girlfriend. *State* v. *Almeda,* supra, 451. Noting that our holding in *Whelan* did not require an oath for the admission of

In *State* v. *Whelan,* supra, 752, we emphasized that a prior inconsistent statement had to be given under circumstances ensuring its reliability and trustworthiness in order to be admissible. We therefore declined to allow prior oral statements of a witness to be used as substantive evidence, "limit[ing] substantive admissibility of prior inconsistent statements to situations where the likelihood of fabrication is slight and the risk of coercion, influence or deception is greatly reduced." Id., 753. While we noted that the requirement that prior statements be written and signed "is not an absolute guaranty of reliability, it does provide significant assurance of an accurate rendition of the statement and that the declarant realized it would be relied upon."[6] Id., 754. Consistent with this focus on reliability, the trial court articulated its specific reasons for overruling the defendant's objections to the admission of the out-of-court statements of Billie and Rice at the probable cause hearing. Considering the conditions under which the statements were made and the fact that both men, although absent when the Albright shooting occurred, had demonstrated personal knowledge of certain facts and circumstances surrounding the incident, the court found that the statements were reliable in accordance with *Whelan.*

The following conditions under which the statements were given support the trial court's finding of reliability. First, the statements were contemporaneous tape

prior inconsistent statements for substantive purposes, we concluded that the witness' statement was admissible under the criteria established in *Whelan. State* v. *Almeda,* supra, 452. The fact that the witness was not present at the scene of the crime and did not have personal knowledge that the defendant shot the victim did not defeat the admissibility of the statement under *Whelan.*

[6] This reasoning applies to tape-recorded statements as well. *State* v. *Alvarez,* 216 Conn. 301, 313, 579 A.2d 515 (1990); *State* v. *Whelan,* 200 Conn. 743, 754 n.9, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

recordings of the entire interview with each witness. The interviews were conducted only a few days after the shooting.[7] The testimony of the police officers to whom the statements were given indicated that they did not initiate either inquiry regarding the Albright shooting. Moreover, making false statements to the police could have subjected Billie and Rice to criminal prosecution. General Statutes §§ 53a-157 and 53a-180; *State* v. *Whelan,* supra, 754–55. Finally, both witnesses were subject to cross-examination at the probable cause hearing.

As to Billie's personal knowledge of the circumstances surrounding the shooting, the trial court, at the probable cause hearing, found the following facts. Billie knew that "green-eyed Dave" was a drug dealer and that Albright, Gregory Grant and Grant's cousin worked for "green-eyed Dave." Billie also knew that Albright, Gregory Grant and his cousin sold drugs from the premises at 83 Hallock Street, the scene of the shooting. Billie had known the defendant for around two years and knew that for approximately two months before the shooting the defendant had sold drugs in front of a restaurant across from 83 Hallock Street. Billie was aware of the feud among drug dealers in the area around 83 Hallock Street. Billie spoke with the defendant the day before the shooting. The defendant indicated that he was unhappy about "green-eyed Dave's boys" selling drugs in the Hallock Street area and that "he was gonna take somebody out." Billie observed the defendant carrying a loaded gun the day

---

[7] As we stated in *State* v. *Whelan,* 200 Conn. 743, 750, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986): "[P]rior statements are, necessarily, made closer to the event in question, when memories are fresher and when there is less likelihood that the statement is the product of corruption, false suggestion, intimidation or appeals to sympathy."

before the shooting. Billie arrived at the scene shortly after the shooting and observed the defendant on the corner smiling.

The trial court, at the probable cause hearing, found that Rice's statement was also based on personal knowledge of certain facts relevant to the shooting. Rice was not present when the shooting occurred but arrived at the scene shortly thereafter, noticed police cars in the area and discovered that Albright had been shot. Rice saw the defendant, who was Rice's cousin, a short time after the shooting at the apartment of the defendant's girlfriend, which was near the crime scene. Rice knew that prior to the shooting the victim had had some problems with other people and had pulled a gun on someone. Rice observed the defendant at his girlfriend's apartment holding a silver and black .38 automatic handgun with an empty clip.[8] The defendant told Rice that he had shot and killed Albright. Rice was convinced, on the basis of his knowledge of the surrounding circumstances, that the defendant was telling the truth.

Relying on the foregoing, the trial court, at the probable cause hearing, concluded that Billie and Rice had personal knowledge of certain facts pertaining to the shooting and that their statements were reliable.[9] The

[8] At the trial, the state introduced into evidence seven spent shell casings that had been ejected from a .38 automatic handgun that the police had found across the street from the scene of the shooting.

[9] The trial court, *Gormley, J.,* upon admitting the statements as substantive evidence at the probable cause hearing, stated: "[T]he court is not repudiating the decision in the *Green* case [*State* v. *Green,* 16 Conn. App. 390, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988)], I just feel that the circumstances here are different than the circumstances in the *Green* case. This court is looking at this thing on the overall question as to the reliability of the circumstances surrounding the giving of these two statements, one of which was given the day before the shooting by this defendant, who indicated he was going to do something like what happened and then the day of the shooting and within a reasonably short time,

court therefore overruled the defendant's objections and admitted the tape-recorded statements as substantive evidence. We are persuaded that the conclusions of the trial court are amply supported by the evidence and that the court properly admitted the statements of Billie and Rice for substantive evidentiary purposes pursuant to *State* v. *Whelan,* supra.[10]

## II

The defendant next claims that the probable cause hearing was fatally flawed by the admission of the tape-recorded statements of Billie and Rice as substantive evidence and, therefore, that the trial court improperly made a finding of probable cause. This court is empowered to review the adequacy of the trial court's determination of probable cause. *State* v. *Mitchell,* 200

thereafter and in close proximity to where the crime took place and with a loaded gun on his person with an empty clip, he then indicated he had, in fact, done it. I don't think one can just isolate those two statements. I think one has to look at the totality of the circumstances and one statement gives support for the other. Circumstances here I find are reliable, statements were given to police officers, did not appear from the testimony of the two police officers that either one of them started off to inquire about this particular crime, that these people were in police custody for other purposes and I believe at least Billie, anyway, raised the subject himself that thereafter the statements were taken down in their entirety were later typed, one was signed and signed under oath, in the Billie case and the other one, Mr. Rice, four days later acknowledged the truth of what was contained in that statement. To me it would be ridiculous and a miscarriage to tell the jury that they can use all other portions of the statements of Rice and Billie, even though they may be repudiated on the stand but they cannot make use of what those persons actually heard, to limit them in this case where I think there is substantial reliability for those statements."

[10] Our conclusion applies with equal force to the admission of Rice's prior inconsistent statement for substantive purposes under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), at the trial when Rice again denied the truthfulness of his earlier statement. For the reasons stated in footnote 5, supra, we need not address the admission of Rice's transcribed statement at the trial as a past recollection recorded.

Conn. 323, 331, 512 A.2d 140 (1986). The sole basis for the defendant's challenge to the finding of probable cause is the trial court's admission as substantive evidence of the tape-recorded statements of Billie and Rice. Since we have determined that the trial court properly admitted these statements, this second claim of the defendant must fail.

## III

The defendant also claims that the trial court improperly instructed the jury that it could draw an adverse inference from the defendant's failure to produce certain witnesses. At trial, the defendant's girlfriend, Rozelle Brown, testified as follows in support of the defendant's alibi defense. On the day of the shooting the defendant arrived at Brown's apartment at 2:30 p.m. and remained there until 1 a.m. They ate dinner at about 5 p.m. Brown heard gunshots at around 10:30 p.m. The defendant was sitting on the couch when the gunshots were fired. Brown heard sirens and saw emergency personnel in the street. The defendant yelled from the window and asked what had happened.

On cross-examination, Brown testified that her mother, Christine Bordeaux, her mother's boyfriend, Willie Tompkins, and her sister, Cassandra Bordeaux, had also been in her apartment on the night of the shooting. She testified that her mother and Tompkins had been asleep at the time of the shooting and her sister had just gone to bed. Brown's mother was in the courtroom during Brown's testimony, her sister was at home, and Tompkins was reachable by phone, according to Brown.

The defendant did not call Brown's mother, sister or Tompkins to the stand. The state requested that the trial court give the jury an adverse inference instruction pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), because the defend-

ant had failed to produce these witnesses in support of his alibi. The defendant made a timely objection to the state's request, arguing that he would not naturally produce any of these witnesses because they were not in the room with him at the time of the shooting.[11] The court overruled the defendant's objection and allowed the state to argue to the jury that the defendant's failure to produce the three witnesses permitted the inference that had these witnesses been produced, their testimony would have been harmful to the defendant. The court also gave an adverse inference instruction, as requested by the state, in its charge to the jury. We conclude that the trial court properly gave the requested charge.

In *Secondino* v. *New Haven Gas Co.*, supra, 675, this court stated: " 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' " The *Secondino* rule applies to criminal prosecutions. *State* v. *Watley*, 195 Conn. 485, 488, 488 A.2d 1245 (1985). *Secondino* v. *New Haven Gas Co.*, supra, sets forth a two-pronged test to determine whether an adverse inference can be drawn from the failure of a party to produce a witness: "The witness must be available, and he must be a witness whom the party would naturally produce." In *Secondino*, this court defined a witness who would naturally be produced by a party as a person who "by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if

---

[11] The defendant also argued at trial that the evidence failed to show that Brown's sister and Tompkins were available to testify. Since the defendant contends in his brief on appeal that all three witnesses were equally available to both the defense and the prosecution, he has effectively abandoned the claim made at trial.

favorable, the party would produce." Id., 675. The defendant argues that "[a]ny possible testimony by Christine Bordeaux, Cassandra Bordeaux, or Willie Tompkins is testimony that would be comparatively unimportant, cumulative or inferior to the testimony of Rozelle Brown." We disagree with the defendant's characterization of the possible testimony of these witnesses.

Brown testified that the defendant was sitting on the couch in her apartment at the time of the Albright shooting. Although Brown testified that her mother, sister and Tompkins were not in the room with her and the defendant, she claimed that they were in her apartment at that time. The testimony of several witnesses in support of an alibi defense can hardly be characterized as unimportant or cumulative. State v. Ruiz, 202 Conn. 316, 324–25, 521 A.2d 1025 (1987). Brown's testimony placed the defendant at her home at the time of the shooting. Brown's credibility, however, was cast into doubt by her relationship with the defendant, her testimony that she loved him and her admission that she had transcribed and mailed a letter from the defendant to Rice directing him to recant his earlier statement to the police. The defendant's failure to call Brown's mother, sister or Tompkins to corroborate, at least in part, Brown's testimony, especially in light of Brown's potential bias and the contradictory testimony of several state's witnesses,[12] was a significant circumstance to call to the attention of the jury. The trial court, therefore, did not abuse its discretion in giving the adverse inference instruction.

---

[12] Gregory Grant testified that the defendant was on the street between approximately 5 and 6 p.m. on the night of the shooting and that he had threatened Grant and the victim. Sandy Echols, who had gone to school with the defendant, positively identified the defendant as having been on the street in the immediate vicinity of the shooting twenty minutes prior to its occurrence.

The defendant also claims that Brown's mother and sister and Tompkins were equally available to the state. "Although it may be within the power of either party to produce certain evidence, if that evidence 'was so related to the whole proof in the case that one of the parties and not the other would be expected to produce it, an inference would be justified that the [evidence], if produced, would be unfavorable to that party.' *Turner* v. *Scanlon,* 146 Conn. 149, 161, 148 A.2d 334 (1959)." *State* v. *Reid,* 193 Conn. 646, 662–63, 480 A.2d 463 (1984). By virtue of the relationship of the three witnesses to the defendant's girlfriend, and the fact that they were present in her apartment, as the defendant also claimed to have been, when the Albright shooting occurred, it would have been natural for the defendant, rather than the state, to produce these witnesses in support of his alibi if their testimony would have been favorable. Id., 663; see also *State* v. *Ruiz,* supra, 325. We are not bound to review this claim, however, because "the defendant did not advance his argument of equal availability at trial in compliance with our rules." *State* v. *Reid,* supra, 663; see Practice Book § 4185.[13]

## IV

Finally, the defendant claims that the trial court improperly refused to reinstruct the jury, in accordance with the defendant's request, that certain testimony could be used only for impeachment purposes. At trial, Mario Lawrence testified to the following conversation with Rodney Rice on the night of the shooting. According to Lawrence, Rice said that the defendant had told him that he shot Albright. Rice told

---

[13] We note, moreover, that the defendant advances this argument in a footnote, a practice we have specifically disapproved of in prior cases. See *State* v. *Ruscoe,* 212 Conn. 223, 241 n.9, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

Lawrence that the defendant had said that he "snuck up" on Albright and emptied his gun. In addition, Lawrence testified that he had heard the defendant, referring to Albright in a conversation with Rice, say: "What the f--- am I going to do." The trial court instructed the jury that Rice's statements to Lawrence could be used only to impeach Rice and not as evidence of the defendant's guilt. The court instructed the jury, however, that the statements made by the defendant that Lawrence overheard could be used as evidence of the defendant's guilt. The defendant raised no objections to the court's instructions regarding Lawrence's testimony.

After the jury had retired for deliberations, it requested to rehear certain testimony, including the testimony of Mario Lawrence.[14] The court allowed the jury's request. Later the jury requested to rehear the testimony of Lawrence a second time. The court also allowed this second request. The defendant, after each request was granted, asked that the court reinstruct the jury that most of Lawrence's testimony could be used only to impeach the credibility of Rice. The court denied the defendant's requests. The defendant argues that the trial court abused its discretion in denying his requests to reinstruct the jury regarding the limited use of Lawrence's testimony. We disagree.

The defendant took no exception to the adequacy of the trial court's initial instructions to the jury regarding the use of Lawrence's testimony. Moreover, the jury did not request additional instruction when it asked to rehear Lawrence's testimony.[15] The trial court com-

---

[14] The jury also requested to rehear the testimony, or portions thereof, of Gregory Grant, police officer Francisco Ortiz, Rodney Rice, Sandy Echols and Rozelle Brown.

[15] Under Practice Book § 864, when the jury requests additional instructions after retiring for deliberations, the trial court "shall recall the jury to the courtroom and give additional instructions necessary to respond prop-

plied with the jury's request, pursuant to Practice Book § 863,[16] by allowing it to rehear the specified testimony. Practice Book § 860 provides that the trial court *may,* after exceptions to the charge or upon its own motion, give additional instructions, for the following specified reasons: (1) to correct or withdraw an erroneous instruction; (2) to clarify an ambiguous instruction; or (3) to instruct the jury on any matter that should have been covered in the original instructions. The defendant does not invoke any of the foregoing reasons to support his claim that the court's failure to give "additional instructions" was an abuse of discretion. We conclude, therefore, that this claim is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.

erly to the request or to direct the jury's attention to a portion of the original instructions." Section 864 makes no provision for such a request made by counsel.

[16] Practice Book § 863 provides: "If the jury after retiring for deliberations request a review of certain testimony, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the judicial authority, after notice to the prosecuting authority and counsel for the defense, shall have the requested parts of the testimony read to the jury."

