[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON STATE'S MOTION TO TRANSFER TO REGULAR CRIMINAL DOCKET
In this proceeding, the court must decide whether the case of Bassel C. should be transferred to the regular criminal docket pursuant to General Statutes, Sec. 46b-127. That statute reads in pertinent part as follows: "The court CT Page 1817 shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged."
Bassel C. was arrested on a warrant issued on September 15, 1992 by the Honorable Howard J. Moraghan, presiding judge of the regular criminal docket. Thereafter, the matter was transferred to the juvenile docket and a petition was filed on September 16, 1992, alleging two counts of murder.
(a) In violation of Connecticut General Statutes, Sec.53a-54c, FELONY MURDER, on September 10, 1992, in Danbury, he committed robbery and during the commission of the robbery a nonparticipant was shot and killed by a participant. No. 92 09 004.
(b) In violation of Connecticut General Statutes, Sec.53a-54a MURDER, on September 10, 1992, in Danbury, he intentionally caused the death of another person. No. 92 09 004.
A hearing was conducted on November 3, 9 and 19 and December 15, 1992 at which hearing witnesses[1] testified and documentary evidence[2] was presented. At the hearing, the State was represented by advocate, Attorney John H. Kearney, and Bassel C. was represented by public defender, Attorney Michael Courtney.
 I.
From the testimonial and documentary evidence, the court finds that the following facts were established:
A. The victim, Michael Samaha, died from a gunshot wound of the back and abdomen on September 11, 1992, at 4:55 A.M. (State Exhibit 9 — Autopsy Report.) The respondent, Bassel C., was fourteen years old on the date when the crime charged against him was committed. (State Exhibit 1 — Birth Certificate.) The death was caused by a bullet discharged CT Page 1818 from a .32 caliber Beretta semi-automatic pistol which was operable. (State Exhibit 4 — Firearms Report.)
The murder occurred in the alleyway between Dimyan's Market and the liquor store on 112-116 Elm Street, near the intersection of Beaver Street. (State Exhibit 5 — Sketch Map. ) Danbury Police Officer Robert Arconti and Detective John Mahoney, were called to the scene the evening of September 10, arriving between 9:45 and 10:00 P.M. They both recognized the victim lying in the alleyway as Michael Samaha from having seen him in the area many times over the past ten years. This location adjoins a public housing project, and the police are called there frequently for illegal activities, including the use and sale of drugs. They found the victim face down with blood and mucus coming from his mouth, groaning, but unable to speak to them. His trousers were partially removed so that his buttocks were exposed. He was holding a $20 bill in his hand when they turned him over. He died the next morning at the emergency room of Danbury Hospital at about 4:55 A.M., about six and one-half hours after he had arrived there. The immediate cause of death on the death certificate was listed as a gunshot wound of the abdomen. (State Exhibit 2.) Shortly after removing the victim to the hospital, the police recovered a small black pistol at the scene, a .32 caliber semi-automatic Beretta, which had been stolen a few months before from the residence of Edward Crowe in Roxbury, Connecticut.
Before dark, on the evening of September 10, the respondent had shown a small black loaded pistol to Timothy Mourning and Terrel "Chuck" Staton across the street from the murder scene. He had shown them this pistol several times over the summer and even allowed them to fire it. They both are seventeen years old and testified they had known Bassel C. and his brother Fred C. for several years from school and from playing and hanging around with them in this neighborhood. They had been with both of them that evening, and about six other young men, playing basketball across the street from Dimyan's Market. It got dark around 8:30 P.M. and when it started to rain, the group dispersed. Within a few minutes, both Timothy Mourning and Terrel Staton testified they heard two gunshots.
Within five minutes after hearing the shots, Timothy Mourning testified at the hearing that he saw the respondent CT Page 1819 run towards him but could not remember what he said. The State tried to refresh his recollection by showing him a three page written statement he signed on September 12, 1992, two days after the shooting. After reviewing the statement, he still did not remember what the respondent had said to him. At this point, the State declared him a hostile witness and moved to introduce his written statement (State Exhibit 5) which was inconsistent with his testimony. The attorney for the respondent objected and argued that it was unreliable because the witness did not have personal knowledge of the murder, the crime charged, citing State v. Green, 16 Conn. App. 390,547 A.2d 916, cert denied, 210 Conn. 802,553 A.2d 616 (1988). The State argued that it was admissible under State v. Whelan, 200 Conn. 743 (1986) and State v. Grant,221 Conn. 93 (C.L.J. February 4, 1992). The court admitted the statement and allowed the respondent an exception.
His statement was dated September 12, 1992, two days after the shooting, and contained an admission, "I just shot somebody," made by the respondent about five minutes after the witness heard the two shots fired. In State v. Whelan, supra, 753, the court held that a statement is admissible in evidence and may be considered for substantive purposes where the witness has (1) signed the statement; (2) has personal knowledge of the facts stated; and (3) testifies at trial and is subject to cross-examination. Here the statement was signed, the witness had personal knowledge of many facts relative to the crime, and was cross-examined by the respondent's attorney.
The court stated in State v. Whelan, supra, 750, 751, that prior statements are necessarily made closer to the event in question, when memories are fresher and when there is less likelihood that the statement is the product of corruption, false suggestion, intimidation, or appeals to sympathy. "Quite simply, when the declarant is in court, under oath, and subject to cross-examination before the factfinder concerning both his out-of-court and in-court statements, `the usual dangers of hearsay are largely nonexistent. . . .'" As to the requirements that the witness have personal knowledge of the facts relative to the crime charged, as argued by the respondent's attorney relying on State v. Green, supra, that prong of the Whelan rule does not require the declarant to have witnessed the crime. The prior inconsistent statement is admissible for substantive purposes CT Page 1820 if it is given under circumstances reasonably assuring reliability. State v. Grant, supra, 99. The court found most of the facts in the statement were made from the declarant's own personal knowledge. Under these circumstances they were substantially reliable, including the admission made by the respondent, "I just shot somebody," for these reasons:
(1) he was shown a loaded black pistol by the respondent a few hours before he heard the two shots at or near the murder scene;
(2) he had seen the respondent coming from the scene about five minutes after hearing the shots;
(3) the statement was given only two days after the murder when the likelihood is less for corruption;
(4) the witness, being on probation, had experience with police investigations and was less likely to be nervous and afraid as a person with none. The court was unpersuaded with the argument that he was coerced by the police and gave them what they wanted to avoid going to jail.
The court also admitted into evidence two statements made by Ms. Elisha Council, age 28, who reported the murder to the police shortly after she heard two shots from the alley on September 10, 1992, at approximately 9:30 P.M. within the next twenty-four hours, she gave three statements to the Danbury police in which the facts changed. The first was an oral statement made at her own request to Detective Michael and was admitted as a police report. (State Exhibit 6.) She told him that she had met the victim in the alley a few minutes before hearing the shots and that he wanted to have sex with her. She wanted nothing to do with him because he was drunk and that "she had her rag on." She told the police that night and also testified that she had known the victim for a number of years from his coming to this neighborhood for sex and drugs. At the hearing, she testified of being in a second floor balcony apartment to the rear of 112-116 Elm Street and that she could look down into the alleyway. At about 9:30 P.M., she heard two shots and saw then Michael Samaha on the ground bleeding from the mouth and moaning. She then reported the shooting to the Danbury police. She testified giving the police two written CT Page 1821 statements. The first was three typewritten pages (State Exhibit 7) by Detective John Mahoney on September 10, 1992, at about 11:45 P.M. It described how three males had taken money out of the victim's pockets, then pulled his pants off, and saw one of the three males fire two shots at him. She did not identify any one of them in this first statement. The second statement was two pages and dated September 11, 1992, at 3:05 A.M. It was in her own handwriting and stated how two males had knocked the victim to the ground, took money from his pockets, and then one fired two shots at face range. She identified the two males standing over the victim as "Fred and Richie Kahn," and a third male was away from them and was not responsible. She knew they were from Beaver Street and thought they were brothers. (State Exhibit 8.) At the hearing, she recanted portions of both two written statements. She saw three men in the alleyway talking with the victim. She heard two shots and saw two men running away. But because it was dark and raining at that time, she was not able to identify who they were. She could see the shape of their heads but not their faces. She could see only their shadows. She gave these two statements because the police had badgered her the entire night and coerced her into making them. On the witness stand she said that her mother told her to keep her mouth shut about what she saw that night because it was none of her business.
The attorney for the respondent objected to the admission of these written statements for the same reasons he previously made relative to the statement of Timothy Mourning. (State Exhibit 5.) She also testified being coerced and threatened by the police into making the two statements. The court admitted the police report and the two written statements under the rules previously cited under the Whelan and Grant cases, supra. In deciding that they were admissible for substantive purposes, the court considered the inconsistencies in her testimony and these two statements. On the stand, she recanted that she saw this respondent and his brother standing over the victim searching through his pockets and then pulling out a gun and shooting him. From reading the two statements and from what she told the police immediately after the shooting, she had personal knowledge of many of the facts related to this murder.
The police officers were able to identify the victim at the scene because street lights from Elm Street illuminated CT Page 1822 the alleyway. This witness was standing in the balcony apartment about ten feet above where the shooting took place and had a much closer view of the murder scene. From the totality of the circumstances, and from observing her on the stand, the court believed that she saw the murder and was able to identify the participants as described in her own handwritten statement of September 11, 1992. The court believes she changed her mind on the witness stand to extricate herself from testifying that she saw this victim being shot.
 II.
A. Under General Statutes, Sec. 53a-54a(a), a person commits murder "when, with intent to cause the death of another person, he causes the death of such person or of a third person. . . ." At this juncture, the court is dealing only with probable cause which exists if the facts found are sufficient in themselves to warrant a person of reasonable caution to believe that Bassel C. has committed the crime of which he has been accused. In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. See State v. Cobuzzi, 161 Conn. 371,376 (1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 677,30 L.Ed.2d 664 (1972); State v. Kaplan, 20 Conn. App. 183, 186
(1989). Intent can, of course, be established circumstantially. State v. DeForge, 194 Conn. 392, 399
(1984). More often than not, a party's intention is inferred from his or her statements and actions. State v. Smith,198 Conn. 147, 154, 155 (1985). Even though Ms. Council recanted in her testimony identifying the respondent and his brother Fred as the two persons she saw robbing the victim and the respondent shooting him, the court believes her written statement of September 11 that identified them. And the admission that Timothy Mourning could not remember on the stand, the court believes the respondent told him, "I just shot somebody," five minutes after the witness had heard the two shots. The admissions described in his written statement of September 12 has probative value. From these findings of fact, the court concludes that when Bassel C. fired the pistol at the victim, he had the intent to murder him.
B. General Statutes, Sec. 53a-54c, FELONY MURDER, provides in material part that "[a] person is guilty of murder when, acting either alone or with one or more persons, CT Page 1823 he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime . . . causes the death of a person other than one of the participants. . . ." A person may be convicted of felony murder even though he had no intent to and did not personally kill the victim. State v. Castro, 196 Conn. 421, 429, 493 A.2d 223 (1985).
The elements for the State to prove probable cause for felony murder are that (1) the respondent and others committed or attempted to commit a robbery; (2) that the death of the victim was caused by the respondent or one of the other participants; and (3) that the respondent or one of the other participants caused the death in the course of and in the furtherance of the robbery. State v. Cobbs, 203 Conn. 4,6 (1987).
The predicate felony here was robbery. General Statutes, Sec. 53a-134(a), ROBBERY, provides, "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he or another participant in the crime: . . . (4) displays or threatens the use of . . . a pistol, revolver . . . or other firearm. . . ."
The robbery and the murder occurred in the alleyway at the same time and place. The respondent had a pistol and by force removed or tried to remove money from the victim's pants. The robbery and murder occurred at the same time and place.
The court finds that the respondent and his brother Fred, and another participant, were at the murder scene on September 10, 1992 between 9:00 and 9:45 P.M. The participants were all there attempting forcibly to take money from the victim and had partially removed his trousers in the process with the intent and purpose of robbing him of his money. He died as a result of a gunshot wound fired by the respondent from a pistol.
Accordingly, the matter of Bassel C. is transferred to the regular criminal docket as required by General Statutes, Sec. 46b-127 both for MURDER, section 53a-54a, and FELONY MURDER, section 53a-54c of the Connecticut General Statutes.
Petroni, J. CT Page 1824