STATE OF CONNECTICUT *v.* GREGORY PIERRE
(AC 24225)

Foti, West and Hennessy, Js.

---

[9] See footnote 4.

Argued December 3, 2003—officially released May 18, 2004

30

*William T. Koch, Jr.*, special public defender, with whom was *Jeremiah Donovan*, special public defender, for the appellant (defendant).

*Peter A. McShane*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, *Michael L. Regan*, supervisory assistant state's attorney, and *Courtney Morris*, legal intern, for the appellee (state).

*Opinion*

WEST, J. The defendant, Gregory Pierre, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (B). On appeal, he claims that the trial court improperly (1) denied his motion to suppress written and oral statements that he made to the police and (2) admitted into evidence a prior inconsistent statement for substantive consideration pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 23, 1998, at approximately 6 a.m., a taxicab driver picked up three males at a closed super-

market in Waterford and drove them to the defendant's apartment at 103 Michael Road in New London. At 6:30 a.m., Waterford police began investigating a Saab that belonged to the victim's father and had been found partially submerged in the town's duck pond. Inside the car, the police discovered a business card from Lucky's Cafe in New London on which a private telephone number was handwritten. On January 10, 1999, the victim's remains were found in Bates Woods, a recreation area in New London located across from Michael Road, where the defendant lived. Additional facts will be set forth as needed.

I

The defendant first claims that the court improperly denied his motion to suppress written and oral statements he made to the police subsequent to his arrest. Specifically, he argues that his right to counsel under the sixth amendment to the United States constitution[1] and the constitution of Connecticut, article first, § 8, attached at the time of his arrest by warrant.[2] We disagree.

---

[1] We note that "[t]he right to counsel is guaranteed by both the fifth and sixth amendments to the United States constitution. The sixth amendment accords the right of an accused to the assistance of counsel in all criminal prosecutions; this right attaches only at or after the time that adversary judicial proceedings have been initiated . . . ." (Internal quotation marks omitted.) State v. Jones, 205 Conn. 638, 647–48, 534 A.2d 1199 (1987). "[T]he fifth amendment, unlike the sixth amendment, contains no explicit language providing for the right to counsel. The United States Supreme Court, however, held in [Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] that such a right was necessary to protect an accused's fifth amendment privilege against compelled self-incrimination during custodial interrogation. . . . Thus, [t]he Sixth Amendment right to counsel is analytically distinct from the Fifth Amendment right created by Miranda." (Citations omitted; internal quotation marks omitted.) State v. Jones, supra, 648–49. Here, the defendant's right to counsel claim is based on the sixth amendment, not the fifth amendment.

[2] The defendant raised two additional arguments contingent on our concluding that his right to counsel attached at the time of his arrest. We conclude, however, that it did not. Therefore, we do not address those arguments.

The following additional facts are necessary for our resolution of the defendant's claim. On June 14, 1999, the defendant was arrested in Garden City, New York. While in custody, he made an incriminating written statement to the police after being advised of, and having waived, his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). On June 24, 1999, the defendant made an incriminating oral statement to the police while en route to Connecticut, again after being advised of his *Miranda* rights.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . When a factual issue implicates a constitutional claim, however, we review the record carefully to ensure that its determination was supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Perez*, 78 Conn. App. 610, 616, 828 A.2d 626 (2003).

"We have consistently held that a defendant's right to counsel under the sixth amendment or its state constitutional counterpart arises only at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information or arraignment." (Internal quotation marks omitted.) *State* v. *Falcon*, 196 Conn. 557, 560, 494 A.2d 1190 (1985). It is well settled that "an arrest, whether or not accompanied by a warrant, does not mark the start of adversarial judicial proceedings." Id., 561.

Moreover, even if we were to agree with the defendant's claim that his right to counsel attached at the

time of his arrest, the court properly denied his motion because he did not invoke that right. See *State* v. *Lewis*, 220 Conn. 602, 612–13, 600 A.2d 1330 (1991). At no point in the taking of his written statement or in the conversation taking place during extradition to Connecticut did the defendant ask for an attorney or state that he wanted to end the conversation. See *State* v. *Perez*, supra, 78 Conn. App. 618. Therefore, we conclude that the court properly denied the defendant's motion to suppress the written and oral statements.

## II

The defendant also claims that the court improperly allowed the introduction of a *Whelan* statement containing the assertions of a codefendant.[3] He argues that (1) a third party statement within a prior inconsistent statement precludes satisfaction of the "personal knowledge" requirement of *Whelan*, (2) the third party statement at issue constituted inadmissible hearsay and (3) admitting the prior inconsistent statement into evidence violated his sixth amendment right to confront the witnesses against him. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. The state called Norman Carr as a witness during its case-in-chief. Carr was friendly with the defendant and the two codefendants, Abin "A.B." Britton and Jeffrey Smith. On February 16, 1999, Carr provided the state police with a seven page written statement at his attorney's office, describing certain incriminating statements made by Britton and the defendant in Carr's presence.[4] During his testi-

[3] Abin "A.B." Britton and Jeffrey Smith were codefendants at trial.

[4] Carr's statement was a description of what he heard the defendant and Britton say about the victim's homicide. Carr stated that the conversation took place sometime in the summer of 1998, possibly late August or September, when he, the defendant and Britton sat in the back of a company van while returning from a work site. According to Carr's statement, Britton began by describing how the victim came into Lucky's Cafe, attempting to purchase some crack cocaine. Britton said that he drove with the victim in the victim's Saab to the defendant's apartment in New London to execute a

mony at trial, however, Carr insisted that he never had heard Britton or the defendant discuss the killing of the victim. He maintained that any assertion to the contrary in his February 16, 1999 written statement to the police was false. The court ruled that Carr's prior inconsistent statement could be admitted for substantive consideration under *Whelan*.[5]

We first note the standard of review. "The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Citation omitted.) *State* v. *Newsome*, 238 Conn. 588, 596, 682 A.2d 972 (1996).

A

The defendant first argues that the "personal knowledge" requirement of *Whelan* is negated by a third party statement. We disagree.

drug sale. The defendant, Smith and an individual nicknamed "Nito" followed them in a separate car. Carr's statement provided, in relevant part, as follows, referring to Britton by his nickname, A.B., and the defendant by his nickname, Coyote: "A.B. and Coyote then said that after they beat the guy, they put the guy back inside the Saab and drove him to Bates Woods behind the dog pound. A.B. and Coyote then said that once they arrived at Bates Woods parking lot, they took the guy out from the car and again started to beat on him. A.B. started to brag and said that he took a pole and placed it into the guy's mouth. A.B. said that he really jammed the pole down his throat and then twisted the pole to break his neck. A.B. said that prior to doing this with the pole, the guy was still alive but after he did this, the guy died immediately."

[5] Substantive use of Carr's prior inconsistent statement allowed the jury to consider whether Britton and the defendant *actually made* the statements attributed to them in Carr's statement. In other words, the truth of Carr's statement, "A.B. and Coyote then said . . ." was that Britton and the defendant *actually said* what had been attributed to them by Carr in his prior statement. Substantive use of Britton's statement is a separate issue that we address in part II B of this opinion.

In *Whelan,* our Supreme Court adopted a rule "allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." *State* v. *Whelan,* supra, 200 Conn. 753. In *State* v. *Grant,* 221 Conn. 93, 99, 602 A.2d 581 (1992), the Supreme Court explained that the "personal knowledge" requirement of *Whelan* does not necessitate an eyewitness account of the facts or events recited in the prior statement. Instead, the Supreme Court emphasized that "a prior inconsistent statement ha[s] to be given under circumstances ensuring its reliability and trustworthiness in order to be admissible." Id., 100.

We find no case law to support the defendant's contention that a third party statement, by itself, precludes satisfaction of the "personal knowledge" requirement of *Whelan.* In *State* v. *Buster,* 224 Conn. 546, 552–53, 620 A.2d 110 (1993), on the contrary, the prior inconsistent statement at issue included, in part, what the declarant heard the defendant's cousin say in the defendant's presence about a gun and certain plans for its disposal. The court stated that "[h]ad [the declarant] stated that [the defendant's cousin] said he had done something with the gun, [the declarant] would have met the 'personal knowledge' prong of *Whelan* and the state could have introduced it to show what [the defendant's cousin] said." Id., 560 n.8. The fact that the defendant's cousin made the statements instead of the defendant himself, it is important to note, did not strip the declarant of personal knowledge of the statements he had heard.

In this case, we are satisfied that Carr's written statement to the police was sufficiently reliable for substantive use. At trial, Carr testified that he had known the defendant and Britton for approximately two years before the summer of 1998. Carr described himself as friendly with both men and testified that they all had

socialized and worked together. He testified that he had frequented Lucky's Cafe in New London, where the victim sought to purchase crack cocaine on August 23, 1998. He also testified that he had visited the defendant's apartment on Michael Road. According to Carr's statement to the police, the incriminating statements by Britton and the defendant in late August or September, 1998, were made as all three men rode in the back of a company van upon returning from a work site.

We therefore conclude that Carr had enough personal knowledge of the facts and circumstances surrounding the statements he heard for the court properly to rule that his written statement was reliable for substantive use. See *State* v. *Grant*, supra, 221 Conn. 100–102. Furthermore, a detective testified at trial that Carr had agreed to be interviewed at his attorney's office concerning the victim's homicide. The detective also testified that Carr had scrutinized his written statement, made several changes to it and met with his attorney alone for approximately twenty minutes before agreeing to sign the statement.

B

The defendant next argues that the statement attributed to Britton, recounted within Carr's written statement, was improperly admitted into evidence against the defendant as a dual inculpatory statement and an adoptive admission. We disagree.

Our Supreme Court has "expressly adopted the definition of statement against penal interest contained in Fed. R. Evid. 804 (b) (3)." *State* v. *Schiappa*, 248 Conn. 132, 147, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). Rule 804 (b) (3) of the Federal Rules of Evidence "carves out an exception to the hearsay rule for an out-of-court statement made by an unavailable declarant if the statement at the time of its making . . . so far tended to subject the declar-

ant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." (Internal quotation marks omitted.) *State* v. *Schiappa*, supra, 147–48. In *Schiappa*, the Supreme Court further recognized that "trustworthy, dual inculpatory statements fall squarely within the purview of Fed. R. Evid. 804 (b) (3)." *State* v. *Schiappa*, supra, 149. "In determining the trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest." Conn. Code Evid. § 8-6 (4).

At trial, Britton exercised his rights under the fifth amendment and therefore was unavailable to testify. There is also no doubt that Britton's statement; see footnote 4; was the type of statement that would subject him to criminal liability. With respect to the reliability of Britton's statement, we must consider its timing, its audience and the circumstances in which it was made. As set out in part II A, Britton's statement was made a short time after the victim's homicide, in the company of his friend, Carr, and the defendant, as the three sat in close quarters in the back of a work van. We agree with the court's ruling, based on the totality of the circumstances, that Britton's statement was reliable.

Moreover, the facts recounted in Britton's statement were corroborated by the testimony produced at trial. In his statement, Britton asserted that the victim had attempted to purchase drugs from him at Lucky's Cafe. At trial, a detective testified that telephone records indicated that the victim had called a private line to Lucky's Cafe at 1:29 a.m. on August 23, 1998. The number dialed matched the telephone number found on the Lucky's Cafe business card in the Saab. Britton also stated that

he drove with the victim in the victim's Saab to the defendant's apartment on Michael Road, attacked him in the parking lot, and killed and buried him, with the defendant's aid, in Bates Woods. He then described their attempt to dump the car into the Waterford pond. In fact, the abandoned Saab, belonging to the victim's father, was found partially submerged in the Waterford duck pond on the morning of August 23, 1998. The victim's remains were found in Bates Woods. We therefore conclude that the court properly admitted Britton's statement into evidence as a dual inculpatory statement.

We also conclude that it was proper to admit Britton's statement into evidence as an adoptive admission against the defendant. "An admission may be introduced only against the party who made the admission. . . . An accused can be held to have adopted a statement as his own, however, when his conduct indicates that he assents to or adopts a statement made by another person. . . . Even if a defendant makes no response to a statement made within his hearing, that statement may be introduced when the circumstances . . . naturally called for a reply from him if the statement was not true. . . . Such an admission by one cries out for denial by the other." (Citations omitted; internal quotation marks omitted.) *State* v. *Reddick*, 36 Conn. App. 774, 785–86, 654 A.2d 761, cert. denied, 232 Conn. 922, 656 A.2d 671 (1995).

In this case, Carr's statement reflects that Britton and the defendant each contributed to the story surrounding the victim's homicide. See footnote 4. When Britton spoke alone, the nature of his statement naturally called for a denial from the defendant. For instance, according to Carr, Britton stated that "after [we] killed the guy, [we] dragged his body into the woods. [We] tried to bury his body but the ground was too cold, so [we] took some type of tarp and covered his body." The

defendant's contributions to the story reflect a willingness to adopt Britton's statement as his own. He had every opportunity to deny his involvement in the killing of the victim, but failed to do so. Any reasonable person listening to Britton's description of the homicide and the concealment of the victim's body would have done so.

## C

The defendant's final argument is that the admission of Carr's prior inconsistent statement violated the defendant's sixth amendment right to confront the witnesses against him. Specifically, he argues that he could not cross-examine Carr in any meaningful way about his written statement because Carr claimed not to remember most of its contents. The defendant also argues that admitting Britton's statement into evidence, as part of Carr's *Whelan* statement, violated the defendant's constitutional right of confrontation. We disagree.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omit-

ted.) *State* v. *Eaton*, 59 Conn. App. 252, 265, 755 A.2d 973, cert. denied, 254 Conn. 937, 761 A.2d 763 (2000).

With respect to Carr, it is important to note that although he claimed in his testimony to have lapses of memory as to some matters, he was able to testify about other matters that he did remember. On direct examination, Carr claimed that he never gave a statement to the police. He testified that he did not read the statement that the police gave him to sign on February 16, 1999. Although Carr did claim a loss of memory at certain times on direct examination, the thrust of his testimony was that he *never said* what was attributed to him in the written statement.

On cross-examination, defense counsel immediately attacked Carr's motives and interests by inquiring into the charges that were pending against Carr as of February 16, 1999, and how those charges were resolved subsequent to his meeting with the police. Carr also testified that his act of signing the statement represented only an attempt to stop the police from bothering him and that the statement merely restated facts that the police purportedly knew already about the killing of the victim.

As for the contents of his written statement, Carr confirmed on cross-examination that, as described in the statement, he had seen television newscasts about the victim's death. He confirmed the truth of the statement's assertion that he went to work for a cleaning company for one day in the summer of 1998, possibly in late August or September. He confirmed as true the statement's assertion that he worked with Smith and a supervisor named Todd. He also confirmed that he did in fact drink beer on that day, as described in the statement. As soon as defense counsel asked Carr, however, to confirm the truth of the assertion that he had heard

a conversation in the back of the company van about a homicide, Carr claimed to have a loss of memory.

Defense counsel was presented with, and used, plenty of ammunition to attack Carr's credibility and truthfulness on cross-examination. Because the jury had reason to doubt the sincerity of Carr's testimony in court, it had reason to doubt the value of an out-of-court statement attributed to him. See id., 267. "The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story." (Internal quotation marks omitted.) Id., 268. "While [t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause . . . that is not the situation in this case." (Internal quotation marks omitted.) Id., 266. We conclude that the defendant had a meaningful opportunity to cross-examine Carr in satisfaction of the sixth amendment right to confrontation.

The defendant also challenges the admission of Britton's statement, contained in Carr's *Whelan* statement, as violative of the defendant's sixth amendment right of confrontation. We conclude that Britton's statement did not contravene the defendant's constitutionally protected right to confront the state's witnesses against him.

"The United States Supreme Court has held that the confrontation clause of the sixth amendment . . . does not necessarily bar the admission of hearsay statements against a criminal defendant. . . . Certain hearsay statements are admissible if (1) the declarant is unavailable to testify, and (2) the statement bears adequate indicia of reliability. . . . Evidence admitted under such an exception thus is presumed to be so trustworthy that adversarial testing would add little to

its reliability." (Citations omitted; internal quotation marks omitted.) *State* v. *Schiappa*, supra, 248 Conn. 158–59.

Our analysis in part II B of this opinion on the admissibility of Britton's statement settles the matter. We concluded that the requirements for a dual inculpatory statement were satisfied in this case under the hearsay exception for a statement against penal interest. Therefore, the defendant's confrontation clause claim with respect to Britton's statement is without merit.

We therefore conclude that the court did not abuse its discretion by admitting Carr's prior inconsistent statement for substantive use pursuant to *Whelan*.

The judgment is affirmed.

In this opinion the other judges concurred.